JAMES SHONKWEILER, APPELLEE, v. MILLARD F. HARRING-
TON ET AL., APPELLANTS.

FILED NOVEMBER 1, 1918. No. 20021.

1. **Conversion:** ELECTION OF REMEDIES. One whose property has been wrongfully converted by others may maintain an action in tort

against the wrongdoers, or may waive the tort and sue as upon an implied contract to pay the value of the property, but he cannot maintain an action as upon an implied contract against some of the wrongdoers and at the same time another action in tort against other wrongdoers.

2. **Bankruptcy: Torts: Remedies.** In such case, if the principal wrongdoer has become bankrupt, and plaintiff has proved his claim as upon an implied contract against such bankrupt, and received his dividends thereon, he cannot at the same time or thereafter maintain an action in tort against those who may have assisted the principal wrongdoer in converting the property.

Appeal from the district court for Adams county: Harry S. Dungan, Judge. *Reversed and dismissed.*

*Stiner & Boslaugh* and *Tibbets, Morey, Fuller & Tibbets,* for appellants.

*McCreary & Danley* and *Charles E. Bruckman, contra.*

Sedgwick, J.

The plaintiff brought this action in the district court for Adams county against these appellants, who were the president and secretary of the Harvard Co-operative Grain & Live Stock Company, a corporation. He claimed that the corporation had received his wheat and had converted it to their own use, and were, therefore tort-feasors, and that the president and secretary, having assisted the corporation in doing so, were joint tort-feasors.

The principal discussion is as to whether this wheat left at the elevator of the corporation was a bailment or a sale of the wheat. The evidence is very strong, if not conclusive, that the wheat was left at the elevator under an agreement of sale, the price to be determined at the market price for wheat when the plaintiff should demand payment. Under such circumstances, of course, the plaintiff could not maintain an action in tort against some of the officers of the corporation purchasing the wheat. There is, however, another question presented in the record which seems

to us to be decisive of the case. The elevator company
failed in business and was declared a bankrupt. The
plaintiff filed his claim for the value of the wheat in
the bankruptcy court, and received dividends thereon
before beginning this action, and afterwards, while the
action was pending, he received another dividend upon
his claim in the bankruptcy court. Thus, as suggested
by the defendants' brief, he was maintaining two in-
consistent actions at the same time, based upon the
same transaction. The bankruptcy courts generally
hold that a claim sounding in tort cannot be ad-
judicated by a bankruptcy court, but if the claim is
based upon tort it may be proved in a bankruptcy
court "whenever it may be resolved into an implied
contract." As was said by the federal court in *Clarke
v. Rogers,* 183 Fed. 518: "For example, it is a settled
rule that where a tort-feasor by conversion of personal
property has sold the property converted, and received
cash therefor, the true owner may sue him for money
had and received as on an implied contract. This, of
course, is a mere fiction of law; but, like all other such
fictions, it is effectual when it will accomplish the ends
of justice. So that, in that case, the owner of the
property may proceed for a tort, or, at his option, on
an implied contract, which would entitle him to make
proof under section 63."

And, again, in *Standard Varnish Works v. Haydock,*
143 Fed. 318: "One from whom a bankrupt obtained
goods by means of fraudulent representations, which
were not paid for, has his election to confirm the sale
and assume the position of a creditor for the price, or
to repudiate the sale and recover the goods, but, having
made such election, with knowledge of the facts, by
proving his claim and voting as a creditor in the
bankruptcy proceedings, he is concluded thereby, and
cannot thereafter withdraw his claim and recover the
goods."

And, so clearly, as against the corporation, this plaintiff by filing his claim in bankruptcy and accepting his proportion thereon is concluded, and "cannot thereafter withdraw his claim and recover the goods." It was with the corporation that the plaintiff transacted this business, and if he could not withdraw his claim in bankruptcy and recover the goods or their value from the corporation, it would not seem that he could recover the value of the goods from those who he says assisted the corporation in committing the tort, which he has waived. In *Crook v. First Nat. Bank*, 35 Am. St. Rep. 17 (83 Wis. 31), it was said: "An action *ex contractu* to recover money paid by a bank to defendant, and received by him to the use of plaintiff, is an election by the latter to affirm the payment by the bank, and he is thereby estopped from subsequently asserting as a basis for recovering the money from the bank that such payment was wrongful." That is, even if he had not authorized the bank to pay the money to John Doe, but afterwards elected to sue John Doe for the money, he could not then bring another action against the bank. And so here, if he has waived the tort and collected from the corporation upon the implied contract to pay for the goods, he cannot afterwards allege against anybody that he did not sell the goods to the corporation.

The judgment of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.

LETTON, J., not sitting.